Ashburn, J.,
dissenting. My reasons for coming to a ■different conclusion from that of my brethren.
I will only give such facts as appear necessary to a clear *410 understanding of the legal questions involved in this ease. The only law involved in this case is that fixing and limiting the liability of gratuitous bailees. Touching this particular case, they arise out of the instructions given, or refused to be given, to the jury.
Plaintiff claims she deposited with defendants, who were bankers and owners of a banking-house, prior to November 8, 1867, certain United States bonds, inclosed in a tin box; that the box was fastened with a lock, and her mother was in possession of the key; that she placed the box containing the bonds in the possession of defendants for safe-keeping, and to be returned to her; that defendants did not safely and securely keep her bonds, but, on the contrary, negligently and carelessly placed said bonds in an insecure and improper place in their banking-house, and that by reason of defendants’ carelessness her bonds were stolen and not returned to her.
Defendants admit they are bankers, or rather brokers, and had a banking-house, and that in 1867 they received from plaintiff', to keep without reward, a tin box, locked, and the key not in their possession ; that they put the tin box, thus locked, in the vault in their banking-house; that they had no knowledge of the contents of the tin box; that the vault was, on November 8,1867, in the night, broken open, and the contents of the tin box stolen, without their knowledge or consent; that they had been in the habit of receiving some deposits for their customers, and for the accommodation of their friends, gratuitously, and at the owner’s risk; “that in receiving said box, and placing the same in their vault, they acted in good faith,” etc.
On the issue thus made up, the case went to the jury. On the part of the plaintiff testimony was offered tending to show that plaintiff had United States bonds in the tin box when deposited with defendants ; that she knew nothing of the safe being placed in the vault; that the tin 'box and its contents had mostly, for many years, been in the care of defendants, at their banking house; that plaintiff at one time placed her bonds in possession of the defendants for safe *411 keeping, inclosed in envelopes ; that she took them out with the purpose of placing them in the care of a relative, and afterward placed them in the tin box, with valuables belonging to her mother, and then returned them to defendants for safe-keeping; that she knew of no change in the structure of the bank vault; that the vault was secured by three doors, two of iron, and one of wood,- incased in sheet-iron on both sides, and the wooden door was the inner one; that this vault had been once burglarized by an entrance from the cellar; that the two iron doors were broken down by the burglars, but the wooden door remained intact, and the vault was not plundered; that this was while the building was owned by the former proprietors, and they, to guard against such incursions, had built a solid wall of masonry under the passage-way to the vault. Having heard of thisburglarious transaction, “ the defendants became impressed with the belief that the vault was insecure and not burglarproof, and so in the month of September, 1866, for further-security, and at the suggestion of one of the former proprietors of the bank, who, from hearing of repeated bank robberies, had lost faith in the safety and security of the vault, defendants bought a burglar-proof iron safe and placed it in their bank vault, in which safe defendants thereafter heft their own money and bonds, and the bonds of twenty or thirty other persons left with them on special deposit without reward, save the bonds of plaintiff, her mother, and the bonds of Thomas White.”
And the defendants, to maintain the issue upon their part, gave testimony to the jury, tending to prove the following-facts, viz:
“ That they had perfect confidence in the safety and security of their vault up to the time of the robbery, but bought the safe for further security; that they generally aimed to keep their own bonds and money in the safe after it was put in the vault; that frequently after the safe was locked up at close of banking hours, deposits of money were made by parties on general deposit, and bonds purchased by them of parties coming in to sell, and that upon. *412 .such occasions they would not go to the trouble of opening ■the safe, but would put such money or bonds on the safe, or on the shelves, until the next day, and would leave such money or bonds in the vault on top of the safe, or on a shelf, or on the floor of the vault, over night, ranging from small sums up to $8,000 or $4,000, but could not name any particular occasion.
“ That when the box would be brought back to the bank .at the various times, the person bringing it would ask defendants to set it in their vault, and they would do so ; that •a short time before the robbery the box was taken out, and that Mrs. Regges brought it back and asked them, defendants, to set it in the vault, saying that she was going to leave town, and did not want to leave it at home for fear ■of fire; that the safe was made only for valuables, had some pigeon-holes in it, a small drawer and a shelf, and was filled with their valuables, and those on deposit, as .aforesaid; that they kept their United States revenue stamps in the vault, in a pigeon-hole, and not in the safe, and on the night of the robbery, had of such stamps on hands from $600 to $1,000 worth, which were not disturbed by the burglars.”
That when the iron safe was put in the vault, the wooden door was removed, and remained off at the time of the robbery. The blacksmith who took down the wooden door from the vault, at one time had on special gratuitous deposit with defendants $8,000 or $4,000 worth of bonds.
The testimony discloses the following circumstances and •agreement in regard to the bonds deposited by White and the blacksmith:
“That some time before the robbery the said Thomas White bought'of the defendants certain bonds of the United States of the character of the plaintiff’s, to the amount of $400; that defendants told him they had no envelopes on .hand large enough to contain them; that White put his bonds in a small paper box, and handed it to the defendants, who then notified him that they could not put the box in ■their safe, and the paper box-was set in the vault.
*413 “ That the blacksmith who took off the door at the time the safe was put in, afterward, and before the robbery herein complained of, made a special deposit of from $3,000 to $4,000 in government bonds in the vault, and outside of' the safe, with the defendants, but which he took away before the robbery. The said bonds were by agreement to be kept in the vault outside of the safe.”
The plaintiff requested the court to charge the jury as follows:
“ If the defendants knew, or had any reasonable grounds to presume, that the tin box contained United States bonds, although they did not have the key to the box, they would be bound to take the same care of it that they usually took of like bonds of others on special deposit with them without reward, or which they usually took of their own, and if they did not take this care, and loss ensued, they would be liable.”
This instruction the court refused to give, except as embodied in the general written charge. To this refusal and" the charge as given, the plaintiff at the time excepted.
This instruction should have been given to the jury. I think the proposition is sound in principle and unexceptionable in phraseology. In refusing to give it, the. court, if not intending to cast suspicion upon the request as a principle of law, necessarily left the impression upon-the mind of the jury that it was not law in the ‘case as-requested.
As I understand the general charge of the court, the following paragraph of the charge was intended as the equivalent of request fourth refused. The court said :
“ Again, the defendants, if there was no agreement otherwise, were bound to take the same care of this box that they ordinarily bestowed upon the bonds of others which were deposited in the same manner as these were, and if they did not, and loss thereby followed, they would be responsible, even though defendants took as good care of plaintiff’s-bonds as they usually took of their own under similar circumstances.”
*414 The vice in this part of the charge, in my judgment, is, that the principle of law — good faith, proper care, gross negligence — is made to turn upon the box in which the bonds of plaintiff were kept. The emphasis placed by the court upon the fact that the bonds were, when deposited, in a tin box, was well calculated to mislead the jury upon the question of proper care and good faith. This becomes more manifest when coupled with the next element of the •charge couched in this language :
“ But I can not say to you that they were bound to keep bonds in a box, where they had no control of the key, in the same way they did bonds in envelopes. They would have no right to open the box. Bonds deposited in boxes .are not the same as bonds deposited in envelopes. If the plaintiff' expected that the box would be put in the safe, and the defendants or their cashier knew of her expectations, they ought to have put it there or notified her that they •could not do so. But if she had no such expectation, or if they had no reason to believe she had, they would not be bound to put it there. They were bound to put it where they had reason to believe she expected it to be put.”
This was substantially charging the jury that defendants were excused from exercising as great care for the secnrity of plaintiff’s bonds because in a tin box, as if deposited in •envelopes. The scale of difference that would secure liability, and be excusable want of care in such case, is not given. But the jury were told there was a difference, and that difference lay in, out, or about the tin box! No word appears in the evidence that the plaintiff was advised of .any change in the bank vault, or could l’easonably have any special expectations as to the particular place in the vault her bonds would be deposited. She deposited her •bonds with defendants for safe keeping, and in the absence of a special agreement, good faith charged defendants with the duty of keeping them as securely and safely as they .kept their own bonds, of to have notified her, as they did White, that they could not do so. It was not so much a *415 question of expectation for the jury, as of duty, good faith, proper care, gross negligence.
I think here, as did Judge Day in B. & O. R. R. v. Whitaker, 24 Ohio St. 651, when he said: “¥e are relieved from this,” (determining whether the jury were warranted on the facts in making the verdict they did,) “ for we regard the charge of the court to the jury so far misleading in its general scope and character upon a material point as to endanger a correct finding upon the facts by the jury.”
The plaintiff further requested the court to charge the jury:
“ 7. If the defendants knew, or had reasonable ground to presume, that the tin box contained bonds, or other valuables, and knew, or found out, that they could not or would not keep the box in the safe, to act in good faith they would be bound to notify the owner of the box, or persons who afterward delivered it to them, of that fact, and if they did not, and loss ensued, they would be liable.”
This charge the court refused to give. The plaintiff excepted, and also excepted to the charge of the court on the same point.. The court in the general charge said to the jury:
“ But if the vault remained as secure at and after the reception of the burglar-proof safe, and up to the time of the robbery, as it did when the box was deposited, and if the defendants had no reason to believe that neither the plaintiff nor her mother was deceived in the security of the vault, they were not obliged to notify either the plaintiff or her mother of the procuring of the safe, nor were they obliged to put the box in the safe. They were obliged to notify them if the vault actually became insecure, or if they discovered that it was insecure, and not otherwise; that is, if the parties interested in the box were resting under a delusion or trusting to a false security, and the defendants knew it, or had reason to know it, good faith required them to remove that false impression, or be answerable therefor in damages.”
*416 She trusted defendants, and rested under the belief they would act in good faith. Was this a delusion?
I think the charge requested was correct in principle,, and fully demanded by what the testimony tended to disclose as to the true state of the relations and reciprocal duties of the pax-ties. The charge given does not, I think,, meet the demands of the law of good faith in such cases. When the door of the vault was taken off to admit the iron safe, the safe became an element of security to and of the-vault, of which it formed a paid. And when defendants deposited their own bonds in that ii-on safe for better security, good faith and proper care l-equired the defendants to put the bonds of the plaintiff in that iron safe, or notify her-they could not or would not do so. The good faith die-tated by fair dealing required the defendants to treat plaintiff’ and her bonds with the same consideration they did. Thomas White and “the blacksmith.” They were notified their bonds could not go in the iron safe, and by special agreement their bonds were to be kept in the vault outside the safe. Failing to so notify and agree with plaintiff) defendants were guilty of gross negligence, and the juiy should have been so charged.
It is said this was a gratuitous deposit, from which plaintiff was to dei-ive all the benefit and defendants all the burdens. As the case resulted, the law in this respect was-reversed.
“ A man may warrant a thing without any consideration; and, thei-efore, when I have reposed a trust in you upon your undertaking, if I suffer when I shall have so relied, upon you, I shall have my action.” Cogg v. Barnard, 1 Smith’s Leading Cases, 271.
How is this doctrine of gratuitous bailments considered ?" Edwai-ds on Bailments (p. 47) says: “ A person receiving goods to keep, impliedly stipulates that he will take some degree of care of them; but the degree of care is to be measured by the watchfulness with which he preserves his own property of a like kind. He must observe good faith in keeping them as he keeps his own property. If they be- *417 lost or injured by his gross neglect, or a violation of good faith on his part, he is responsible for the damages sustained.”
On page 68 he says: “ Where a person premises, or the law implies a promise on his part, to keep the goods or chattels, it is but reasonable that he should be required to discharge the duty faithfully; and it does not seem any abuse of language to speak of the breach of this duty as a breach of good faith. However expressed, it is a failure or a default in the keeping of an engagement, for the performance of which his good faith is'pi edged in vain.”
And this I take to be the doctrine of the books, and is founded in moral honesty.
Why was not this tin box put in the iron safe ? Not because it was of too great bulk to go in the burglar-proof vault of the safe. The dimensions of the burglar-proof vault would have held, by calculation, twenty-eight such tin boxes. I give the dimensions of each as shown by the proofs.
The box was “ a small tin box, of about eight inches long, four inches wide, and five inches high;” and it appears “ that the burglar-proof part of the safe was in dimensions about 21| inches high, 17 inches wide, and 12J inches deep.”
Defendants are caused to say in defense, “ that they had perfect confidence in the safety and security of the vault' up to the robbery.” I will not question the integrity with which this statement was made, but in the light of all the’ circumstances of this case, I am led to believe the reasons: for putting the burglar-proof safe in the vault appears from: the testimony that tends to show “ that the defendants became impressed with the belief that the vault was insecure and not burglar-proof, and in the month of September,, 1866, for further security, and at the suggestion of one of the former proprietors of the bank, who, from hearing of repeated bank robberies, had lost faith in the safety and, security of the vault, the defendants bought a burglar *418 proof iron safe, and placed the same in their said vault, and in which safe thereafter they kept their own money and bonds, and the bonds of twenty or thirty third persons, left with them on special deposit, to be kept without reward, save the bonds of the plaintiff and her mother, which were in the tin box, as stated, and the bonds of one Thomas White.”
On careful consideration, I think the court erred in not giving the jury the requests asked by plaintiff, and that the charge as given was, on the whole, calculated to mislead the jury.